UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY DOLCH, individually and on behalf
of all others similarly situated,

                Plaintiff,

                                                8:07-CV-528-T-24-TBM

vs.

LINEN SOURCE, INC.

                Defendant.
_____/

**DEFENDANT LINEN SOURCE, INC.'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

        Defendant Linen Source Inc. ("Linen Source"), through its undersigned counsel, hereby respectfully moves this Court to dismiss all counts of the complaint in this action, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). In support of this Motion, Linen Source submits herewith a memorandum in support, and states as follows:

**INTRODUCTION**

        This is a putative class action alleging six claims, including claims for declaratory and injunctive relief. The substance of each claim, however, is identical. The gravamen of plaintiff's case is that Linen Source does not count the threads in its 825 thread count sheets the same way that plaintiff would have them counted. While plaintiff acknowledges that there is more than one way to count threads, plaintiff objects to the method used by Linen Source.

        However, under the current pleading standards for federal court recently articulated by the Supreme Court, plaintiff's complaint should be dismissed. *Bell Atlantic Corp. v.*

*Twombly*, No. 05-1126, 550 U.S. ___, 127 S. Ct. 1955, ___ L. Ed. 2d ___, 2007 WL 1461066 (U.S. May 21, 2007).  In *Bell Atlantic*, the Supreme Court set aside the *Conley* rule and tightened the standards for federal court pleadings.  *Bell Atlantic* reflects a major sea change in pleading standards.  This complaint fails the *Bell Atlantic* test because it is bereft of meaningful allegations.  The complaint has no discussion of how or whether the plaintiff was damaged, no allegations that establish loss causation, and no exhibits or attachments that fill in any of the missing information.  Because the complaint is so deficient, it forces the Court to speculate about whether it states a claim for relief or not.

In this case, plaintiff alleges nothing of substance more than an alternate method of counting threads used to construct a sheet.  While plaintiff uses catch phrases and buzz words, the allegations fail to show loss causation, injury, or damage resulting from the thread count method used by Linen Source.  In order to state a claim, however, plaintiff would have to allege that the sheet he purchased was substantially inferior in some demonstrable way, not just that an alternate method was used to count the threads.

**BACKGROUND**

Linen Source is a Tampa, Florida company that specializes in the sale of linens. (Compl. ¶ 6.)  Linen Source sells quality bedding and accessories through its catalog, its website – www.linensource.com – and its outlet store in Tampa, Florida  (Compl. ¶ 6.)

According to the complaint, on January 16, 2007, plaintiff purchased one king sized Signature Pima Flat Sheet through Linen Source's website. (Compl. ¶ 8.)  The linens plaintiff purchased were "100% Supima® cotton, 825 thread count sheets." (Compl. ¶ 9.) A fabric's "thread count" is measured by counting the number of threads contained in one

square inch of fabric.  (Compl. ¶ 11.)  The process of looming fabric consists of weaving together yarn from two directions, warp (vertical) and weft (horizontal).  *See* (Compl. ¶ 11); (American Heritage Dictionary of the English Language (4th ed. 2000).  Plaintiff alleges that thread count is considered one measure of fabric quality.  (Compl. ¶ 12.)

Plaintiff acknowledges that Linen Source uses a method of counting threads that counts each thread in a two-ply yarn per square inch as a separate thread:

> [T]hey are calculated by counting "plied" yarns, *i.e.*, one yarn that is made by twisting together multiple finer threads.  Thus, for example, Defendant describes linens made of fabric with 250 yarns in both the vertical and horizontal direction according to the number of component threads, claiming they are 1000 thread count quality. . . .

(Compl. ¶ 13.)  For example, for linens made from two-ply yarns, each two-ply yarn is made up of two separate threads that are twisted or "plied" together as part of the fabric construction process.  Linen Source would count the two-ply yarn as two separate threads because two separate threads are woven into the linens each time a two-ply tarn is used.  Plaintiff, however, would count the two-ply yarn as only one thread, even though a two-ply yarn may contain twice as much cotton as a single-ply yarn.  Linen Source has attached an illustration that shows how a two-ply yarn looks compared to single-ply construction.  Exhibit A.

Notwithstanding plaintiff's current challenge to Linen Source's method of counting yarns, plaintiff never alleges that he called Linen Source to complain about his single flat sheet purchase or to seek a refund.  In fact, plaintiff fails to allege that he took any action whatsoever to return his purchase.  Instead, after purchasing the linen from Linen Source on

January 16, 2007, plaintiff commenced this lawsuit approximately two months later on March 29, 2007. (Compl. ¶ 8.)

## APPLICABLE STANDARDS

In recent weeks, the Supreme Court has significantly tightened the pleading requirements in federal court. *See Bell Atlantic Corp. v. Twombly*, No. 05-1126, 550 U.S. ___, 127 S. Ct. 1955, ___ L. Ed. 2d ___ , 2007 WL 1461066 (U.S. May 21, 2007); *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., No. 06-484, 2007 WL 1773208 (U.S. June 21, 2007). Under the new standards, a complaint should be dismissed when the plaintiff fails to allege "enough facts to state a claim to relief that is **plausible on its face**" and "**raise a right to relief above the speculative level**." *Bell Atlantic*, 127 S. Ct. 1974.

Courts have previously relied upon the minimal "notice" requirements set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) as "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1]  *Bell Atlantic*, 127 S. Ct. at 1968. In *Bell Atlantic*, the Supreme Court explained:

---

[1] There is a related case called *Lingle v. Linen Source Inc.*, No. 8:06-CV-2376-T-23MSS, that was recently transferred to the Middle District of Florida from the Northern District of Illinois. The docket is attached hereto as Exhibit B. Before the case was transferred, Linen Source moved to dismiss the case based upon the comparatively low standards of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and based on Illinois law. The Court relied upon the principles that "[g]enerally, the complaint is not required to allege all, or any, of the facts entailed by the claim. *Kolupa v. Roselle Park Dist.*, 438 F. 3d 713, 714-15 (7th Cir. 2006). 'It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate.' *Id.* at 714." Considering these minimal and inapplicable standards, the Court's decision in *Lingle* should have no application here. Under *Bell Atlantic*, the "tidbits" standard is no longer sufficient, and is "best forgotten."

> This 'no set of facts' language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard.

*Id.* The Supreme Court criticized *Conley* and stated:

> We could go on, but there is no need to pile up further citations to show that Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

127 S. Ct. at 1969.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65 (internal citations omitted).[2]

Recently, the Supreme Court issued another decision establishing a higher threshold for pleading securities class actions. *See Tellabs, Inc. v. Makor Issues & Rights*, Ltd., No. 06-484, 2007 WL 1773208 (U.S. June 21, 2007). Although this is not a securities class action, the *Tellabs* decision highlights the requirements and the Supreme Court's trend towards heightened pleading requirements involving loss causation and scienter. In clarifying the pleading requirements, *Tellabs* and *Bell Atlantic* empower the district court: "a

---

[2] Plaintiff's allegation regarding sheet quality consists of nothing more than "labels and conclusions."

5

district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic*, 127 S. Ct. at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)). Further, the Court explained,

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless be weeded out early in the discovery process through 'careful case management,' given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.

*Bell Atlantic*, 127 S. Ct. 1955. Instead, the Supreme Court requires plaintiffs, from the very commencement of an action, to state a claim with enough facts to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 1974.

The new standards are particularly important to allegations of loss causation in putative class actions. The Supreme Court explained:

> We alluded to the practical significance of the Rule 8 entitlement requirement in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with " 'a largely groundless claim' "be allowed to " 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.' "*Id.*, at 347 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975)). So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'

*Bell Atlantic*, 127 S. Ct. at 1966.

This new standard is particularly appropriate in this case in order to avoid expensive and time-consuming discovery, the potential waste of judicial resources, and the *in terrorem* threat of a nationwide class action. Applying these new standards, the Court should dismiss the complaint.

## SUMMARY OF ARGUMENT

### Thread Count

Plaintiff's complaint lacks plausibility and fails to raise a right to relief above "the speculative level." Plaintiff has failed to plead that Linen Source made a factual representation or contractual promise about how it counted the threads in its linens.

Plaintiff proposes that the "accepted industry practice is to count each thread as one, even threads spun with two- or three-ply yarn." (Compl. ¶ 14.) Plaintiff disagrees with the method for counting the threads in the linen. However, and most importantly, plaintiff never alleges that the 825 thread count linen he purchased from Linen Source failed to include approximately 825 threads per square inch. In other words, plaintiff never alleges that he received a sheet with significantly fewer than 825 threads per square inch, counted in the manner employed by Linen Source. Moreover, plaintiff fails to allege that Linen Source's method of counting threads results in an inferior product. Logic dictates that Linen Source's two-ply yarn results in thicker, richer fabric than single-ply yarn. Plaintiff has not and cannot establish a claim for actual damages. He purchased 825 thread count linens and he received exactly that.

Why is thread count so important to plaintiff? Plaintiff says that thread count is an indication of quality. *See* (Compl. ¶¶ 10-12). Thus, the real issue for plaintiff should be the

quality of the sheets, not some arbitrary way of counting the threads. However, plaintiff's complaint never addresses sheet quality and never alleges in any meaningful way that Linen Source's sheets are demonstrably inferior. While plaintiff uses meaningless "labels and conclusions," he never explains how the alternative method of counting threads caused him actual damages in the sheet he purchased.

As a result, this Court is required to speculate as to whether the alternate thread count used by Linen Source actually resulted in damage to plaintiff. In order to avoid this speculation, the Court should dismiss plaintiff's claims and require that plaintiff plead facts, if any, that would show how the alternate method supposedly produced a sheet of inferior quality.

Plaintiff's lack of plausibility is even more apparent when the Court considers equally plausible explanations for Linen Source's method of thread count:

- The method of thread count used for Dolch's purchase is completely appropriate and is accepted in the industry;

- Linen Source's 825 thread count sheets contain approximately 825 individual threads per square inch, and thus are properly described as 825 thread count sheets, whether or not the threads are twisted or plied in the looming process;

- Two-ply yarn produces an extremely high-quality and durable sheet and is often preferable for that reason;

- Linen Source's customers choose linens based on many factors completely unrelated to thread count, such as cotton quality, cotton weight, look and feel, durability, and other factors;

8

- Information concerning the debate over thread count has been in the public domain for years[3], predating Dolch's purchase;

- Linen Source's description of thread count was based on accurate information received from its suppliers and manufacturer's representatives; and

- Whether the price paid by Dolch was a good value for the sheet he bought.

The complaint fails to address any of these issues and thus leaves the Court to speculate on whether Dolch even has a legitimate claim for relief. Because plaintiff fails to "nudge" his complaint past these equally plausible explanations, the complaint should be dismissed.

## ARGUMENT

I.  **Plaintiff Cannot Establish a Claim Under the Florida Deceptive and Unfair Trade Practices Act (Count I).**

   A.  *No Loss Causation.*

Plaintiff attempts to assert a claim under the Florida Deceptive and Unfair Trade Practices Act, § 501.201-.23, *Fla. Stat.* (2007) (hereinafter, "FDUTPA" or "the Act") in Count I of the complaint. However, such a claim requires a plaintiff to establish the following: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). A FDUTPA claim requires a consumer to allege "sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or

---

[3] In fact, the satirical online publication, *The Onion*, made light of this tempest in a teapot in September, 2004, over two years before Dolch made his purchase. *See* article attached as Exhibit C hereto. With information like this in the public domain, it was clearly no secret that there are different methods of counting threads.

commerce." *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000)(citations omitted); *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007)(to state a claim under the Act, plaintiff must allege, at a minimum, that she has been aggrieved)(citing *Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997)).

As the Eleventh Circuit Court of Appeal has opined, "[t]he central aim of the Florida statute is to 'make consumers whole for **losses caused** by fraudulent consumer practices.'" *Donald Frederick Evans and Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 915-16 (11th Cir. 1986)(emphasis added). Here, plaintiff has not alleged he suffered a loss as a result of Linen Source's method of counting threads.

Nowhere in the complaint does plaintiff allege that Linen Source delivered linens with significantly <u>less than 825 threads</u> per square inch, as measured by Linen Source's method of counting.[4] Indeed, the only way plaintiff could conceivably have been damaged is if the linens were of demonstrably inferior quality. Also, given that thread count is an indicator of how dense, thick, and soft a sheet is, plaintiff would suffer actual damages only if his sheet were demonstrably inferior in these specific categories. Merely using a different method of counting threads is not synonymous with causing actual damages. Thus, there is no loss causation.

---

[4] In the complaint, plaintiff makes a generalized and conclusory statement that the linens he received were of "lesser quality." (Compl. ¶ 10.) However, this allegation does nothing to nudge plaintiff's claims towards plausibility. Plaintiff's bare, insubstantial assertion lacks specificity, and is nothing more than a "label or conclusion."

### B.     No Consequential Damages.

The plaintiff's FDUTPA claim is defective because it attempts to seek consequential damages.  Under the Act, a consumer may recover only <u>actual damages</u> for unfair trade practices.  § 501.211(2), *Fla. Stat.* (2007) (emphasis added); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1321 (N.D. Fla. 2002).  Courts define "actual damages" as follows:

> Generally, the measure of actual damages is the difference in the market value of the product or service and the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.

*Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985).  Under the Act, consequential damages are not recoverable.  *Id*. at 454; *Smith v. 2001 South Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004).

Here, plaintiff "seeks to obtain a pecuniary benefit for the Class in the form of all <u>actual and consequential damages</u> recoverable from Defendant."  (Compl. ¶ 40.) (Emphasis added.)  Plainly, plaintiff's claim for recovery of consequential damages should be dismissed.  § 501.211(2), *Fla. Stat.* (2007).  Moreover, plaintiff has failed to specify any actual damages resulting from the alleged deceptive practice.

Plaintiff has failed to allege actual damages within the new standards set forth in *Bell Atlantic*.

### C.     Failure to Plead Fraud with Particularity.

Pursuant to Federal Rule of Civil Procedure 9, a complaint asserting claims based on fraud must specifically set forth the facts underlying the alleged fraud.  Plaintiff's claims are largely based on his vague references to "deceptive" and "misleading" omissions and

11

misstatements. (Compl. ¶ 13.) These allegations are tantamount to a fraud claim and require compliance with Rule 9.

Courts construing claims alleging violations of the FDUTPA have required the heightened pleading standard requirements of Rule 9(b) where the claim is premised on a fraud theory. *See Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1294-95 (S.D. Fla. 2006); *Business Radio v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1322 (M.D. Fla. 2005); *Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002). The heightened pleading requirements embodied in Rule 9 dictate that the circumstances constituting fraud be pled with particularity. *Cannon*, 242 F. Supp. 2d at 1332.

In this case, plaintiff alleges only one specific misrepresentation: the name of the product itself: "100% Supima® Cotton, 825 Thread Count Sheets." *See* (Compl. ¶¶ 9, 10). There are no exhibits or attachments to the complaint that purportedly reflect any other false representations. Plaintiff has failed to provide specific information concerning the who, what, when, where, and why concerning any other alleged misstatements. While plaintiff alludes to other false and misleading representation, plaintiff does not quote Linen Source, provide any attachments to the complaint, or highlight any statements from Linen Source's website or brochure whatsoever. Plaintiff has failed to identify a single affirmative statement from Linen Source that constitutes an alleged misrepresentation nor an intent to deceive. Merely alluding to a misrepresentation is wholly insufficient to satisfy the heightened pleading requirements of Rule 9 and *Bell Atlantic*.

    **II.**    **Plaintiff's Plain Allegations Show the Absence of a Binding Contract and Plaintiff's Failure to Comply with the Florida Uniform Commercial Code – Sales Bars His Breach of Contract Claim (Count II).**

        **A.**    ***Breach of Contract.***

To properly allege a breach of contract claim, plaintiff must establish (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Rollins v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). No enforceable contract exists when there is no mutual assent to a definite proposition. *Glosser v. Vasquez*, 898 So. 2d 1179, 1181 (Fla. 3d DCA 2005); *Hewitt v. Price*, 222 So. 2d 247 (Fla. 3d DCA 1969). To create a contract, the parties must have a definite and distinct understanding as to the scope of the contract. *Glosser*, 898 So. 2d at 1181. Plaintiff avers in the complaint that he sought to purchase 825 thread count linens counted in a particular manner. (Compl. ¶¶ 8-10, 13.) Plaintiff has failed to allege that Linen Source agreed in any fashion whatsoever to sell plaintiff linen with yarns counted according to plaintiff's preferred method of counting. Nothing in the complaint whatsoever suggests that Linen Source promised to utilize a particular method of counting the threads or looming the linens. The 825 thread count sheets contained approximately 825 threads per square inch. Given the fact that there was no contract term that specified the <u>method</u> of counting, or the <u>method</u> of constructing the sheet, plaintiff cannot state a claim for a breach of contract. This is like someone who bought a car and complains that the car was not put together by hand as opposed to being built on an assembly line. Absent a contractual promise or factual representation about <u>how</u> Linen Source would construct the fabric or thread, plaintiff has not alleged and cannot allege the existence of a contract term that was breached. Even if plaintiff has alleged a contract, he

has not alleged a breach of contract since Linen Source never agreed to a certain method for counting the yarns in its linen.  Finally, as discussed earlier, plaintiff has failed to adequately allege loss causation or damages.  Accordingly, this claim should be dismissed.

### B. *Florida Uniform Commercial Code.*

This claim is governed by the Florida Uniform Commercial Code – Sales ("UCC"), Chapter 672, *Florida Statutes* (2007).  The UCC applies to sales transactions of goods.  § 672.102, *Fla. Stat.* (2007).  Under the UCC, the buyer has the burden of establishing a breach of contract with respect to goods he accepted.[5]  § 672.607(4), *Fla. Stat.* (2007).

If the goods are accepted, the buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach *or be barred from any remedy.*"  § 672.607(4), *Fla. Stat.* (2007) (emphasis added.)  "The purpose and effect of this Commercial Code provision requiring notice is to require that the parties act in a commercially reasonable manner and to make it possible for the seller to exercise his rights under Section 672.508, *Florida Statutes*, which provides for the seller's right to cure any defect and thereby mitigate damages."  *In re Holistic Servs. Corp.*, 29 B.R. 509, 512 (Bankr. S.D. Fla. 1983). Under Section 672.607(3)(a), a buyer is barred from any remedy if he fails to notify the seller of the alleged breach.  *Id.*

---

[5]  Under the UCC, goods are "accepted" when the buyer fails to make an effective rejection after having a reasonable opportunity to inspect the goods.  § 672.606, *Fla. Stat.* (2007).  A rejection of goods must be made within a reasonable time and is ineffective unless the buyer notifies the seller, seasonably.  § 672.602, *Fla. Stat.* (2007).  Plaintiff has not alleged that he rejected the linen he purchased.

Plaintiff failed to allege in the complaint that he notified Linen Source of the alleged breach of contract or purported nonconforming goods. Accordingly, he is barred from any remedy and this claim should be dismissed.

### III.   Breach of Implied Covenant of Good Faith and Fair Dealing Must Fail Since No Term of Any Contract Was Breached (Count III).

In order to establish a claim for breach of implied covenant of good faith and fair dealing, a plaintiff:

> [M]ust demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectation of the other party thereby depriving that party of the benefits of the agreement.

*Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004). Although Florida law recognizes the implied covenant of good faith and fair dealing as part of every contract, a claim for breach thereof cannot be maintained absent an allegation that an express term of the contract has been breached. *See id.* at 1312 (citing *Burger King Corp. v Weaver*, 169 F. 3d 1310, 1315 (11th Cir. 1999)); *see also Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232 (Fla. 4th DCA, 2001).

In an unreported decision, this Court dismissed with prejudice, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing where the plaintiff had essentially admitted that an express term of the contract had not been breach. *Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17 EAJ, 2007 WL 781738, at *5 (M.D. Fla. Mar. 13, 2007). This Court ruled that since defendants had not breached an express term of the

agreement, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing was improper. *Id.*

Similarly, defendant here has not breached any express agreement to the alleged sales contract. Indeed, plaintiff has not alleged and cannot allege that Linen Source has breached any express agreement. Plaintiff merely complains that Linen Source employs an alternate method of counting threads. Such an allegation is completely irrelevant for the purposes of this claim. In fact, Linen Source has complied with the central purpose of the contract when it delivered the precise linens purchased by plaintiff. Therefore, because plaintiff has not alleged and cannot allege that Linen Source has breached an express term of the sales contract, plaintiff's claim for breach of the implied covenant of good faith and fair dealing is fatally flawed and must fail.

Moreover, the purpose of the sales contract was to deliver quality linens. Again, Linen Source has done just that. Plaintiff summarily alleges that the linens he received were "of far lesser quality" simply because he takes issue with the way Linen Source counts threads. In the complaint, plaintiff never once finds fault with the quality of the fabric (*i.e.* the texture, thickness, or finish of the fabric). As a result, it would be disingenuous for plaintiff to allege that he has been deprived of the benefit of the agreement – *i.e.* to receive quality linens.

### IV. Plaintiff's Unjust Enrichment Claim Fails (Count IV).

Plaintiff's alternate unjust enrichment claim must also fail because plaintiff has suffered no injury from which Linen Source has benefited.

A claim for unjust enrichment is established when a plaintiff pleads the following elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value for it.  *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571 (Fla 4th DCA 2006).  Recovery under this theory is equitable in nature and is not available where an adequate legal remedy exists.  *See Bowleg v. Bowe*, 502 So. 2d 71 (Fla. 3d DCA 1987).

Plaintiff's unjust enrichment claim is flawed because plaintiff fails to specify what injury he suffered and how Linen Source has benefited from that injury.  The complaint essentially alleges that plaintiff purchased, and Linen Source delivered linens and that plaintiff disapproves of Linen Source's method of counting threads in the linens.  However, defendant fails to see how plaintiff has been damaged by the transaction and plaintiff has neglected to allege same.

**V.    Money Had and Received Claim Fails (Count V).**

To establish a claim for money had and received, plaintiff must show that the "defendant has possession of the money of the plaintiff which in equity and good conscience he ought to pay over."  *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 n.5 (Fla. 4th DCA 1998). The money had and received claim is "founded upon the equitable principle that no one ought to be unjustly enriched at the expense of another."  *Sharp v. Bowling*, 511 So. 2d 363, 365 (Fla. 5th DCA 1987).  Claims for money had and received and unjust enrichment are virtually interchangeable.  *Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP,

2006 WL 3408043 (S.D. Fla. 2006). "Unjust enrichment is the modern version of the common law action for money had and received." *Id.*; *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 656 (Fla. 5th DCA 1996); *Moore Handley, Inc. v. Major Realty Corp.*, 340 So. 2d 1238, 1239 (Fla. 4th DCA 1976). An unjust enrichment claim may be maintained only where no adequate legal remedy exists. *American Honda Motor Co. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005); *Martinez v. Weyerhaeuser Mortgage Co.*, 959 F. Supp. 1511, 1518 (S.D. Fla. 1996). As discussed earlier, plaintiff fails to specify what injury he suffered and how Linen Source has benefited from that injury. As such, he cannot allege or maintain a claim for money had and received or unjust enrichment in Counts IV and V.

### VI. No Basis for Declaratory Relief Exists (Count VI).

The Declaratory Judgment Act, Section 86.021, *Florida Statutes* (2007) "should not be permitted to foster frivolous or useless litigation to answer abstract questions, to satisfy idle curiosity, go on a fishing expedition or to give judgments that serve no useful purpose. It should be construed to aid those who have a meritorious cause rather than to provide a way of escape for those who would be adversely affected." *Ready v. Safeway Rock Co.*, 24 So. 2d 808 (Fla. 1946). Plaintiff's claim for declaratory relief in Count VI should be rejected on the grounds that his claim amounts to frivolous and useless litigation.

In this action, plaintiff seeks declaratory relief concerning whether he is entitled to have the yarns in linen counted using a particular method. (Compl. ¶¶ 69-71.) Such litigation serves no useful purpose and lacks merit. Plaintiff is attempting to lodge a class action based on a faulty premise. He never alleges that Linen Source promised to count

linens using the method he prefers. Moreover, plaintiff never complained about the linens and has never sought to return the linens. It would be improper to permit plaintiff to maintain a claim under the Declaratory Judgment Act where no bona fide, actual, present and practical need for a declaration exists. *See Santa Rosa County v. Administration Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995) (stating, absent a bona fide need for a declaration based on present, ascertainable facts, declaratory relief is improper); *State v. Florida Consumer Action Network*, 830 So. 2d 148, 152 (Fla. 1st DCA 2002) (because all allegations in the complaint regarding plaintiff's need for a declaratory decree were grounded on speculation and hypothesis, declaratory relief was improper); *Porkolab v. Smithbay Homes, Inc.*, 640 So. 2d 195 (Fla. 3d DCA 1994) (dismissing declaratory judgment claim where no need for declaratory relief existed).

## **CONCLUSION**

For the reasons stated, defendant's Motion to Dismiss should be granted pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6) in all respects, and the complaint should be dismissed.

Respectfully submitted,

 s /  Edward M. Waller, Jr.
Edward M. Waller, Jr., FBN 106341
ewaller@fowlerwhite.com
Charles Wachter, FBN 509418
cwachter@fowlerwhite.com
Julie S. Sneed, FBN 51594
jsneed@fowlerwhite.com
Fowler White Boggs Banker P.A.
501 E. Kennedy Blvd, Suite 1700
Tampa, Florida 33601
Phone: (813) 228-7411

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on June 29, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Tod Aronovitz, ta@aronovitzlaw.com, Steven R. Jaffe, srj@aronovitzlaw.com, and Christopher Marlowe, cm@aronovitzlaw.com, of Aronovitz Trial Lawyers, Museum Tower, Suite 2700, 150 West Flagler Street, Miami, Florida 33130; John Allen Yanchunis, Sr., jyanchunis@jameshoyer.com, and Mark S. Fistos, mfistos@jameshoyer.com, of James, Hoyer, Newcomer & Smiljanich, P.A., 3301 Thomasville Rd., Suite A200, Tallahassee, FL 32308; William M. Sweetman and Paul M. Weiss of Freed & Weiss LLC, 111 W. Washington St., Suite 1331, Chicago, IL 60602; and Austin Tighe of Feazell & Tighe LLP, 6300 Bridgepoint Parkway, Bridgepoint 2, Suite 220, Austin, TX 78730.

                                                        / s /  Edward M. Waller, Jr.

2655090v2