## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### CASE NO. 8:07-cv-00528-SDM-TBM

| | |
|---|---|
| GARY DOLCH, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) JURY TRIAL DEMANDED |
| LINEN SOURCE, INC., a Florida corporation, | ) ) |
| Defendant. | ) |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Gary Dolch, individually and on behalf of all others similarly situated, complains against defendant Linen Source, Inc., upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

### INTRODUCTION

1. Defendant markets, advertises, and sells bedding, including luxury sheets, linens, and pillowcases, through its website and catalog.

2. As to its luxury sheets, Defendant bases its pricing on thread count, which is used to measure the coarseness or fineness of the fabric. For example, a queen-sized Supima cotton flat sheet with a 450 thread count retails for $95.00 on Defendant's website. It is currently on sale for $69.99. That same queen-sized sheet with an 825 thread count is sold by Defendant for $119.00, currently on sale for $79.99. A standard Supima cotton pillow case with a 1250 thread count retails for $79.00 on Defendant's website (currently on sale for $74.99) while one with an 825 thread count retails for twenty dollars less (currently on sale for $29.99).

3. Defendant misrepresents the thread count of the sheets, linens, and pillow cases ("linens") it sells by three to four times, taking a universal measure of linen quality—"thread count"—and turning it on its head.

4. Plaintiff paid more to receive 825 thread count sheets. The price he paid was specifically based on that thread count. He did not get what he paid for. As a result, he is entitled to the difference in the market value of the sheets as delivered and the market value of the sheets as they were represented and as they should have been delivered. He did not receive sheets with the represented 825 thread count.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of the claims asserted herein insofar as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class (who number more than 100) are citizens of states different from Defendant. 28 U.S.C. § 1332(d)(2)(A).

6 This District is the proper venue for adjudication of the claims asserted herein insofar as (a) this is the judicial district where Defendant resides, and (b) this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claim occurred. 28 U.S.C. § 1391(a)(1) and (2).

## PARTIES

7. *Gary Dolch.* Plaintiff Gary Dolch ("Plaintiff") is a natural person residing in Austin, Texas. Plaintiff is a member of the class defined herein, as described more fully below.

8. *Linen Source, Inc.* Defendant Linen Source, Inc., ("Defendant" or "Linen Source") is a corporation organized under the laws of Florida with its principal place of business

in Tampa, Florida. Defendant sells bedding, bath, curtains and decorative accessories through its catalog, its website—www.linensource.com-- and its outlet store in Tampa, Florida.

## FACTUAL BACKGROUND

9.  Through an internet website and a catalog, Defendant sells linens direct to consumers in Florida and throughout the United States. Defendant's website and catalog mirror each other in all material respects.

10. On or about January 16, 2007, Plaintiff purchased one 825 thread count king-size Signature Pima Flat Sheet from Defendant through its website, www.linensource.com. He paid a sale price of $119.00, plus shipping and handling. The price was based in large part on thread count. The same sheet with a 450 thread count retails for $110.00, currently on sale for $79.99.

11. Notwithstanding the foregoing representation of the thread count of the product ordered by Plaintiff, and the resulting price differential, the product received by him was of a far lesser quality. Specifically, upon information and belief, the thread count of the product received by Plaintiff was not the "825 thread count sheets" advertised and promised by Defendant on its website and in its catalog, but a lesser quality product with a lower thread count.

12. Thread count is used as a measure of the coarseness or fineness of fabric. It is measured by counting the number of threads contained in one square inch of fabric, including both the length (warp) and width (weft) threads. It is used especially in regards to cotton linens such as bed sheets.

13. Thread count is often considered a simple measure of fabric quality, so that "standard" cotton thread counts are around 150 while good-quality sheets start at 180 and a count of 200 or higher is considered percale.

14. Defendant sells linens claiming extremely high thread counts (typically over 500). However, Defendant's representations are false and misleading in that they are calculated by counting "plied" yarns, *i.e.*, one yarn that is made by twisting together multiple finer threads. Thus, for example, Defendant describes linens made of fabric with 250 yarns in both the vertical and horizontal direction according to the number of component threads, claiming they are of 1000 thread count quality, when in fact they are not.

15. According to the National Textile Association, which cites the international standards group ASTM, accepted industry practice is to count each thread as one, even threads spun with two- or three-ply yarn. After being consulted by the Association, The Federal Trade Commission agreed with this method.

16. Indeed, at the outset of this litigation, Defendant's own website endorsed this standard method of determining thread count:

> Thread Count is a measure of how many threads are woven into a piece of fabric 1" square. Fewer threads mean a fabric will feel coarser and rougher, while more threads per square inch mean a fabric will feel softer and smoother, and thus be more desirable. The term percale refers to a fabric with a thread count of 180 threads per square inch and up. The higher the thread count, the more luxurious the sheet.

http://www.linensource.com/default.aspx?page=glossary&alpha=T.

17. Remarkably, Defendant's website contained a link next to this definition of thread count to products with grossly overstated thread counts based on Defendant's false and misleading practice of multiplying the true thread count of a material by the number of plies, as described in Paragraph 13, *supra*. *See Id.*

18. Defendant chooses to tie price to thread count. It represents that higher thread count sheets were and are of a higher quality and warranted a higher price. When it fails to

-4-

deliver the stated threat count, it is liable for the difference in the price charged and the actual value of the product; specifically, the difference in the market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered.  As such, upon information and belief, Plaintiff states that his individual damages are within a range of at least $20.00 to $40.00, based upon Defendant's own thread-count pricing scheme set forth on its website, as more particularly set out above.

## CLASS ACTION ALLEGATIONS

### A.  Definition of the Class

19.  Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below, of which Plaintiff is a member (the "Class" or "Class Members"):

> Since January 1, 2003, all persons who purchased sheets or other linens from Linen Source, Inc., which were advertised by it as having a specific numerical "thread count."

### B.  Numerosity

20.  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that Class Members are so numerous that joinder of all Class Members is impracticable.  The number of Class Members can be determined through appropriate discovery.

### C.  Commonality

21.  There are questions of law or fact common to the Class, including, *inter alia*, the following:

> (a) Whether Linen Source determines the thread count of its products according to National Textile Association and ASTM standards;

    (b)    Whether Linen Source determines the thread count of its products according to its own definition thereof on its website and in its catalog;

    (c)    Whether a reasonable consumer would expect a good with a higher thread count to be of higher quality;

    (d)    Whether Defendant has represented goods with higher thread counts at higher prices;

    (e)    Whether Linen Source's acts and omissions alleged herein violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*;

    (f)    Whether Defendant's acts and omissions are material;

    (g)    Whether Defendant has been unjustly enriched; and

    (h)    Whether Plaintiff and other members of the Class have been damaged, and if so, the proper measure of such damages.

**D.    Typicality**

22.    Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of all members of the Class.

**E.    Adequacy**

23.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of Class Members and do not have interests adverse to the Class.

**F.    The Prerequisites of Rule 23(b)(2) are Satisfied**

24.    The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

25. The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

26. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

27. Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**G.    The Prerequisites of Rule 23(b)(3) are Satisfied**

28. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

29. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class Member.

30. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## COUNT I

### Violations of Florida's Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### ("FDUTPA")

31.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 30, *supra*, as if fully set forth herein, and further alleges:

32.     Plaintiff brings this count pursuant to Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

33.     At all relevant times, Defendant provided and offered goods and/or services and thereby was engaged in trade or commerce, as defined in Fla. Stat. § 501.203.

34.     At all relevant times, Plaintiff and the Class were "consumers," as defined by Fla. Stat. § 501.203.

35.     Section 501.204(1) of FDUTPA prohibits Defendant from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Section 501.204(2) of FDUTPA provides that in construing FDUTPA "due consideration and great weight" are to be given interpretations by federal courts and the Federal Trade Commission ("FTC").

36.     Defendant committed a deceptive, misleading, and unfair trade practice under FDUTPA by representing that the goods it sold them had characteristics they do not in fact have; namely, that the sheets and linens it sells have thread counts that are false and misleading, and otherwise do not conform to accepted industry standards or those of the FTC relating to thread counts.

37.     Plaintiff and the Class suffered losses and therefore they were damaged by Defendant's deceptive and unfair practices described above, insofar as they paid for goods that did not have the characteristics represented by Defendant.

38.     The facts and information set forth above about Defendant's method of counting and representing thread counts would be material to a consumer because they were likely to affect a reasonable consumer's decision whether or not to purchase merchandise from Defendant.  As a result of Defendant's conduct set forth above, Defendant has effectively deprived consumers, including Plaintiff and Class Members, of material facts and information, or made false or misleading representations regarding facts and information, which would likely affect their decisions whether to purchase merchandise from Defendant.  Thus, Defendant has aggrieved Plaintiff and Class Members.

39.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

40.     Defendant's practice and course of conduct, as alleged herein, is material and likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.  Thus, Defendant has engaged in deceptive acts or practices.  Plaintiff purchased his 825 thread count sheets after comparing them to lesser expensive lower count, lower quality sheets, and more expensive, higher-thread count sheets.  He expected to receive what was represented:  A sheet which, because of its "825 thread count", had "the lightest, silkiest feel".  See www.linsource.com.  By Defendant's own representations, lesser thread results in an incrementally coarser feel.

41. Further, Defendant has engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

42. Upon information and belief, Defendant acted and continues to act in an identical or substantially similar manner with respect to the entire Class by adopting and implementing identical or substantially similar practices and by making identical or substantially similar false representations of thread count to members of the Class. Unless enjoined and restrained by an order of this Court, Defendant will continue to engage in the unlawful acts and practices set out herein. Such acts and conduct by Defendant have aggrieved or caused monetary losses to consumers, including Plaintiff and Class Members, and unless enjoined by the Court, Defendant will continue to aggrieve or cause monetary harm to Plaintiff and Class Members.

43. Plaintiff has retained the services of the undersigned attorneys who are entitled to a reasonable fee upon prevailing pursuant to Fla. Stat. § 501.2105.

44. Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all actual damages recoverable from Defendant. Plaintiff also seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendant to stop the unlawful practices alleged herein. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary and non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

45. For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and his counsel to represent the Class;

46. Awarding actual damages as provided by Fla. Stat. § 501.211(2);

47. Awarding injunctive relief as provided by Fla. Stat. § 501.211(1);

48. Awarding declaratory relief as provided by Fla. Stat. § 501.211(1);

49. For pre- and post-judgment interest to the Class, as allowed by law;

50. For reasonable attorneys' fees and costs to counsel for the Class pursuant to Fla. Stat. § 501.2105 and if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

51. Granting such other and further relief as is just and proper.

## COUNT II

### Unjust Enrichment

52. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 30, *supra*, as if fully set forth herein, and further alleges:

53. Plaintiff and the Class have conferred benefits on Defendant by paying for goods that do not have the characteristics promised by Defendant. Defendant has knowingly and willingly accepted these benefits from Plaintiff and the Class.

54. Under the circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the other members of the Class.

55. Defendant has been unjustly enriched at the expense of and detriment of Plaintiff and the Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

56. Plaintiff and members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

57.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred on it by Plaintiff and the Class.

58.     Plaintiff and the Class have no adequate remedy at law.  This Count is brought in the alternative to Count I.

59.     Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from Defendant.  Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

60.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

61.     Awarding reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and the Class;

62.     For pre- and post-judgment interest to the Class, as allowed by law;

63.     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

64.     Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury on all issues so triable.

DATED: January 18, 2008

                                                        Respectfully submitted,

                                                        GARY DOLCH

                                                        By:    s/Mark S. Fistos
                                                               One of His Attorneys

                                                        Tod Aronovitz
                                                        Florida Bar No. 186430
                                                        *ta@aronovitzlaw.com*
                                                        Steven R. Jaffe
                                                        Florida Bar No. 0390770
                                                        *srj@aronovitzlaw.com*
                                                        Mark S. Fistos
                                                        Florida Bar No. 0909191
                                                        msf@aronovitzlaw.com
                                                        ARONOVITZ JAFFE
                                                        Suite 2700 – Museum Tower
                                                        150 West Flagler Street
                                                        Miami, Florida 33130
                                                        Tel.: (305) 372-2772
                                                        Fax: (305) 375-0243

                                                        *Attorneys for Plaintiff and Proposed Class*

*Of Counsel:*

Paul M. Weiss
*paul@freedweiss.com*
William M. Sweetnam
*bills@freedweiss.com*
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
Tel.: (312) 220-0000
Fax: (312) 220-7777

Austin Tighe
*austin@feazell-tighe.com*
FEAZELL & TIGHE LLP
6300 Bridgepoint Parkway
Bridgepoint 2, Suite 220
Austin, Texas  78730
Tel.: (512) 372-8100

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2007, a copy of the foregoing First Amended Complaint was sent via fax and electronically to the persons on the service list below.

s/Mark S. Fistos

## SERVICE LIST
### CASE NO:  8:07-cv-00528-SDM-TBM

Charles Wachter
FOWLER WHITE BOGGS
  BANKER P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: 813-222-1136
Fax: 813-229-8313
Email: cwachter@fowlerwhite.com

*Attorneys for Defendant*

Tod Aronovitz, FBN: 186430
Steven R. Jaffe, FBN: 390770
ARONOVITZ TRIAL LAWYERS
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, Florida 33130
Tel:  (305) 372-2772
Fax: (305) 375-0243
Email: ta@aronovitzlaw.com
Email:  srj@aronovitzlaw.com

Paul M. Weiss
FREED & WEISS, LLC
111 W. Washington Street
Suite 1331
Chicago, IL  60602
Tel:  (312) 220-0000
Fax:  (312) 220-7777
Email:  paul@freeweiss.com

Austin Tighe
FEAZELL & TIGHE, LLP
6300 Bridgepoint Parkway

-14-

-15-

Bridgepoint 2, Suite 220
Austin, Texas 78730
Tel: (512) 372-8100
Email: austin@feazell0tighe.com

John A. Yanchunis FBN: 324681
JAMES HOYER NEWCOMER &
  SMILJANICH
4830 West Kennedy Blvd., Suite 550
Tampa, Florida 33609-2589
Tel: 813-286-4100
Fax: 813-286-4174
Email:  jyanchunis@jameshoyer.com

*Attorneys for Plaintiff*

-15-